UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

CHARLES PAUL AMARA,

|                                         |                          |
|-----------------------------------------|--------------------------|
| Plaintiff,                              | 3:25-cv-01617 (BKS/MJK)  |

v.

VILLAGE OF AFTON and OFFICER JUSTIN DAVY, in
his official and individual capacities,

Defendants.

---

**Appearances:**

*Plaintiff pro se:*
Charles Paul Amara
Afton, NY 13730

*For Defendants:*
Paul G. Lyons
Sugarman Law Firm, LLP
211 West Jefferson Street, Suite 20
Syracuse, NY 13202

**Hon. Brenda K. Sannes, Chief United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

## I.    INTRODUCTION

Plaintiff pro se Charles Amara brought this action under 42 U.S.C. § 1983 against

Defendants Village of Afton and Afton Police Officer Justin Davy, (Dkt. No. 8, ¶¶ 10, 35), in the

Supreme Court of New York, County of Chenango on October 27, 2025. (Dkt. No. 1-2, at 1).

Defendants removed this matter on November 18, 2025, and Plaintiff amended his complaint as

of right on December 4, 2025. (Dkt. Nos. 1, 8). His amended complaint alleges multiple

constitutional claims and "supplemental New York State-law claims" arising from his arrest on

May 7, 2025. (*See* Dkt. No. 8).  Defendants move to dismiss Plaintiff's amended complaint

under Federal Rules of Civil Procedure 8 and 12(b)(6). (Dkt. No. 9). The motion has been fully briefed. (Dkt. Nos. 9, 10, 15). For the following reasons, the Court grants Defendants' motion.

## II.    FACTS[1]

Plaintiff alleges that on May 7, 2025, Officer Davy "pursued [Plaintiff] while [he] was in [his] private conveyance from Caswell Street to [his] private residence knowingly using emergency lights without warrant, probable cause, or exigent circumstance." (Dkt. No. 8, ¶ 24). According to Plaintiff, "the record does not reflect that [he] was a statutory 'person,' 'driver,' 'chauffer,' or 'operator' as defined or intended under any State regulatory or penal provisions." (*Id.* at ¶ 17). In addition, Plaintiff claims that he "had and ha[s] no lawful duty to register [his] private conveyance with the State of New York or any of its agencies when exercising a private right and not engaging in regulated commercial activity." (*Id.* at ¶ 23).

Following the pursuit, Officer Davy "entered [Plaintiff's] private curtilage without a warrant, without [his] consent and without any emergency circumstance." (*Id.* at ¶ 25). When Officer Davy approached, Plaintiff was "on [his] private property," "unarmed and not engaging in any criminal activity." (*Id.* at ¶ 26). Officer Davy then "drew and pointed a loaded firearm at [Plaintiff]," (*id.* at ¶ 27), and arrested him after he declined to provide his name," (*id.* at ¶ 30). Plaintiff "was handcuffed, searched, [and] transported to the Chenango County Sheriff's Office," where he was processed and detained. (*Id.* at ¶ 31). Officer Davy issued Plaintiff "several civil traffic citations related to the same incident." (*Id.* at ¶ 32). "A criminal case was commenced against [Plaintiff] in a local town court based on the same incident." (*Id.* at ¶ 33). Plaintiff asserts that these events caused "emotional distress to [him] and to [his] family." (*Id.* at ¶ 34).

---

[1] These facts are drawn from the amended complaint. (Dkt. No. 8). The Court assumes the truth of, and draws reasonable inferences from, the well-pleaded factual allegations, *see Lynch v. City of New York*, 952 F.3d 67, 74–75 (2d Cir. 2020), but does not accept as true any legal conclusions asserted therein, *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiff asserts constitutional claims for unreasonable seizure, unlawful entry onto private curtilage, excessive force, false arrest, retaliatory initiation of criminal process, and "abuse of authority."  Plaintiff also asserts "supplemental New York State law claims," incorporating the claims from a "Notice of Claim" he filed with the Village on July 17, 2025." (*Id.* at ¶ 71).

III.    **STANDARD OF REVIEW**

  A. **Federal Rule of Civil Procedure 8(a)(2)**

  Federal Rule of Civil Procedure 8(a)(2) provides, inter alia, that "[a] pleading that states a claim for relief must contain a short and plain statement of the claim showing that the pleader is entitled to relief." "The statement should be plain because the principal function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial." *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Thus, a pleading that contains only allegations which "are so vague as to fail to give the defendants adequate notice of the claims against them" is subject to dismissal.  *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009).

  B. **Federal Rule of Civil Procedure 12(b)(6)**

  To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim, "a complaint must provide 'enough facts to state a claim to relief that is plausible on its face,'" *Mayor of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir.

2013) (quoting *Twombly*, 550 U.S. at 570). The plaintiff must provide factual allegations sufficient "to raise a right to relief above the speculative level." *Id.* (quoting *Twombly*, 550 U.S. at 555). The Court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See EEOC v. Port Auth.*, 768 F.3d 247, 253 (2d Cir. 2014) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

The complaint of a plaintiff proceeding pro se "must be construed liberally with 'special solicitude' and interpreted to raise the strongest claims that it suggests." *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013) (quoting *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011)). "Nonetheless, a pro se complaint must state a plausible claim for relief." *Id.*

## IV.     DISCUSSION

### A.     Motion to Dismiss - Federal Rule of Civil Procedure 8(a)(2)

Defendants move to dismiss Plaintiff's complaint under, inter alia, Federal Rule of Civil Procedure 8(a)(2). Defendants argue that "the allegations . . . do not provide Defendants with any factual information regarding the specifics or the circumstances confronted by Davy on May 7, 2025." (Dkt. No. 9-2, at 8).

Here, although Plaintiff's pleading is sparse, it identifies claims based on federal law directed at specific defendants, and it supports those claims with some factual allegations. This is enough to give Defendants fair notice of the claims Plaintiff asserts. *See Rissetto v. County of Clinton*, No. 15-CV-0720, 2016 WL 4530473 , at *14, 2016 U.S. Dist. LEXIS 115832, at *67–68 (N.D.N.Y. Aug. 29, 2016) (finding that the plaintiffs' complaint gives defendants fair notice of their claims where it "identifies the numerous Defendants, sets forth salient facts and approximates the time frames in which they occurred, delineates specific federal and state law

4

claims, and expressly ties specific Defendants to each of those claims"); *Green v. City of Mount Vernon*, 96 F. Supp. 3d 263, 281 (S.D.N.Y. 2015) (finding that the plaintiffs' complaint gives fair notice of the plaintiffs' claims because "Defendants also bring a Motion to Dismiss under Rule 12(b)(6) where they identify and respond to claims raised by Plaintiffs."). Therefore, Plaintiff's amended complaint meets the requirements of Federal Rule of Civil Procedure 8(a)(2).

> **B.      Section 1983 Claims Against Officer Davy in His Official Capacity**

Plaintiff brings Section 1983 claims against Officer Davy in both his official capacity and individual capacity, (Dkt. No. 8, ¶ 10), as well as claims against the Village for municipal liability under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). Claims against an individual in his "official" capacity are directed against the governmental entity itself, so allowing claims to proceed against an individual in his official capacity and against the municipality is redundant. *Petruso v. Schlaefer*, 474 F. Supp. 2d 430, 441 (E.D.N.Y. 2007), *aff'd*, 312 F. App'x 397 (2d Cir. 2009); *Rivas v. Onondaga County*, No. 19-CV-00844, 2025 WL 2675826, at *11, 2025 U.S. Dist. LEXIS 183290, at *28–29 (N.D.N.Y. Sep. 18, 2025) ("The Court also dismisses any official-capacity claims against [the prosecutor] as duplicative of Plaintiff's claims against the [municipality]."). Therefore, the Court dismisses the claims against Officer Davy in his official capacity.

> **C.      Section 1983 Claims Against Defendant Davy in His Individual Capacity**

Plaintiff brings several Section 1983 claims against Officer Davy in his individual capacity. To state a Section 1983 claim, a plaintiff must allege that: (1) the defendant was acting under color of state law, and (2) the defendant's actions deprived the plaintiff of "rights, privileges, or immunities secured by the Constitution or laws of the United States." *Cornejo v.*

*Bell*, 592 F.3d 121, 127 (2d Cir. 2010) (quoting *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994)).

### 1.    Unlawful Seizure

Plaintiff brings a claim for "unreasonable seizure" in violation of the Fourth and Fourteenth Amendments. (Dkt. No. 8, ¶¶ 42–46). Plaintiff alleges that Officer Davy "activated emergency lights and sirens while pursuing [him] in [his] private conveyance in the absence of crime or articulable exigent circumstances," and that "[t]he activation and display of emergency equipment occurred outside of any lawful emergency operation." (*Id at* ¶¶ 43–44). Defendants argue that the "Amended Complaint provides no further details regarding the pursuit [and] how it began." (Dkt. No. 9-2, at 8). They also claim that "Defendants had probable cause, or at a minimum, arguable probable cause, to stop and/or pursue his vehicle" because "plaintiff concedes that on May 7, 2025 he was operating a motor vehicle that was not registered with New York State, a violation of New York State Vehicle and Traffic Law § 401(1)(a)." (*Id.* at 5, 8). Plaintiff denies that he conceded that he was operating an unregistered motor vehicle. (Dkt. No. 10, at 6).

The Court does not interpret the complaint to make this concession. Although Plaintiff alleges that he had "no lawful duty to register [his] private conveyance with the State of New York," (Dkt. No. 8, ¶ 23), this is different from a concession that he actually was "operating a motor vehicle that was not registered with New York State," (Dkt. No. 9-2, at 5). Construing the allegations of the complaint in the light most favorable to Plaintiff, the Court cannot infer that his vehicle was unregistered.

The Court thus turns to whether the complaint plausibly alleges that Officer Davy unlawfully seized Plaintiff. "A seizure of the person within the meaning of the Fourth and Fourteenth Amendments occurs when, 'taking into account all of the circumstances surrounding

6

the encounter, the police conduct would "have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business."'" *Kaupp v. Texas,* 538 U.S. 626, 629 (2003) (*per curiam*) (first quoting *Florida v. Bostick*, 501 U.S. 429, 437 (1991); and then quoting *Michigan v. Chesternut*, 486 U.S. 567, 569 (1988)); *see also Salmon v. Blesser,* 802 F.3d 249, 252–53 (2d Cir. 2015). "Examples of circumstances that might indicate a seizure . . . would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980); *see also Simon v. City of New York*, 893 F.3d 83 (2d Cir. 2018) (citing *Mendenhall*, 446 U.S. at 553)).

Limited investigatory stops by law enforcement officers are seizures under the Fourth Amendment. *Whren v. United States*, 517 U.S. 806, 809–10 (1996) ("Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning of [the Fourth Amendment].")"; *Terry v. Ohio*, 392 U.S. 1, 16 (1968) ("It must be recognized that whenever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person [within the meaning of the Constitution.]"). However, although "any reasonable driver would understand a flashing police light to be an order to pull over . . . the Supreme Court has said that such an order would not give rise to a 'stop' unless the driver submitted to the order or was physically apprehended." *Swindle*, 407 U.S. at 566.

Seizures such as police stops "must satisfy the Fourth Amendment's reasonableness limitation." *United States v. Gomez*, 877 F.3d 76, 86 (2d Cir. 2017). "[T]he reasonable suspicion of a traffic violation provides a sufficient basis under the Fourth Amendment for law

enforcement officers to make a traffic stop." *United States v. Stewart*, 551 F.3d 187, 193 (2d Cir. 2009). Additionally, "officers [may] 'conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot.'" *Johnson v. Cerejo*, No. 24-CV-1938, 2025 WL 1616629, at *2, 2025 U.S. Dist. LEXIS 106830, at *4 (D. Conn. June 5, 2025) (quoting *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000)).

"The reasonable suspicion standard is 'not high' and is 'less demanding than probable cause." *United States v. Martinez-Rodriguez*, 798 F. Supp. 3d 289, 295 (N.D.N.Y. 2025) (quoting *United States v. Santillan*, 902 F.3d 49, 56 (2d Cir. 2018)). "Reasonable suspicion 'demands specific and articulable facts which, taken together with rational inferences from those facts, provide detaining officers with a particularized and objective basis for suspecting legal wrongdoing.'" *United States v. Wallace*, 937 F.3d 130, 138 (2d Cir. 2019) (quoting *United States v. Singletary*, 798 F.3d 55, 59 (2d Cir. 2015)). "The question of whether a police officer's suspicion is reasonable is 'an objective inquiry based on the totality of the circumstances as they would appear through the eyes of a reasonable and cautious police officer, guided by his experience and training' . . . and 'commonsense judgments and inferences about human behavior.'" *Elmore v. Harriman*, No. 24-CV-186, 2025 WL 1682624, at *7, 2025 U.S. Dist. LEXIS 114513, at *17 (N.D.N.Y. June 16, 2025) (first quoting *Grice v. McVeigh*, 873 F.3d 162, 167 (2d Cir. 2017); and then quoting *United States v. Weaver*, 9 F.4th 129, 140 (2d Cir. 2021) (en banc)).

Plaintiff does not allege that he pulled over for Officer Davy while Plaintiff was in his "private conveyance." (*See* Dkt. No. 8, ¶¶ 43–44). Thus, to the extent Plaintiff seeks to raise an unlawful seizure claim based on Officer Davy's pursuit, as Plaintiff appears to allege in his first cause of action, he fails to state a claim for unreasonable seizure. *See Swindle*, 407 F.3d at 564,

8

572–73 (attempted traffic stop did not violate the Fourth Amendment because the defendant did not submit to officer's authority, but continued to drive and eventually fled on foot); *United States v. Preston*, No. 07-CR-6128L, 2009 WL 223010, at *9, 2009 U.S. Dist. LEXIS 8518, at *25–26 (W.D.N.Y. Jan. 29, 2009) (finding no seizure occurred where the driver did not pull over when the police activated emergency lights, but rather accelerated and later fled the car), *report and recommendation adopted*, 635 F. Supp. 2d 267 (W.D.N.Y. 2009).

Construing the complaint liberally, the Court also considers the events occurring at or near Plaintiff's private property as part of Plaintiff's claim for unreasonable seizure. Plaintiff alleges that Officer Davy "drew and pointed a loaded firearm at [Plaintiff] while [he] was standing on [his] private property." Because this action "would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business," the Court finds that Plaintiff has plausibly alleged that he was seized at that time. *See Kaupp* 538 U.S. at 629; *Mendenhall*, 446 U.S. at 554.

The Court cannot, however, credit Plaintiff's legal conclusions that there was "an absence of crime and articulable exigent circumstances"; that there was no "lawful emergency operation"; and that Plaintiff was "not engaging in any criminal activity while located on [his] private property when [Officer Davy] approached," (Dkt. No. 8, ¶¶ 26, 42–43). *See Iqbal*, 556 at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."); *Zheng v. United States*, No. 25-CV-3695, 2026 WL 810388, at *4, 2026 U.S. Dist. LEXIS 61070, at *10 (S.D.N.Y. Mar. 23, 2026) ("A court resolving a motion to dismiss does not 'credit' mere 'conclusory assertions 'or legal conclusions couched as factual allegations.'" (quoting *Dane v. UnitedHealthcare Ins. Co.*, 974 F.3d 183, 188–89 (2d Cir. 2020))); *see also United States v. Walker*, 390 F. App'x 854, 857 (11th Cir. 2010) (reviewing the

9

district court's "*legal conclusion* that there were exigent circumstances" (emphasis added)); *United States v. Williams*, 998 F.3d 716, 738 (6th Cir. 2021) (reviewing the district court's "*legal conclusion* as to exigency" (emphasis added)); *Jean-Francois v. Village of Larchmont*, No. 08 CIV. 8212, 2011 WL 744774, at *2, 2011 U.S. Dist. LEXIS 22050, at *4–6 (S.D.N.Y. Mar. 1, 2011) (refusing to credit the plaintiff's "broad, conclusory" allegations that the defendant police detective acted "unlawfully" in detaining, restraining, and arresting the plaintiff).

Plaintiff provides no factual details regarding the circumstances surrounding this pursuit and seizure, such as which traffic citations Officer Davy issued to Plaintiff "related to the same incident," (Dkt. No. 8, at ¶ 32), what Plaintiff was charged with in the "criminal case [that] was commenced against [him] in a local town court based on the same incident," (*id.* at ¶ 33), and whether there is a factual basis for those citations or criminal charges. Without additional factual allegations, the Court cannot "draw the reasonable inference that [Officer Davy] is liable for the misconduct alleged." *See Iqbal*, 556 U.S. at 678; *see also Daniels v. City of Binghamton*, 947 F. Supp. 590, 596 (N.D.N.Y. 1996) (finding that the plaintiff's allegations that the defendants trespassed on his property to illegally seize him stated "a Fourth Amendment violation in form, [but that] they fail[ed] to do so in substance, since they 'consist[] of nothing more than naked assertions, and set[] forth no facts upon which a court could find a violation of the Civil Rights Acts. . .'" (quoting *Martin v. N.Y. State Dep't. of Mental Hygiene*, 588 F.2d 371, 372 (2d Cir. 1978) (per curiam))). Because the amended complaint fails to allege facts that would establish a viable Fourth Amendment claim for unlawful seizure, the Court dismisses that claim.

### 2.    Unlawful Search

Plaintiff brings a claim for "unlawful entry onto private curtilage." (Dkt. No. 8, ¶¶ 51–54). He asserts that Officer Davy "entered [his] private curtilage without consent, without a warrant, and without any emergency circumstance" and that his "privacy and security interests

were disturbed as a direct result." (*Id.* at ¶¶ 52–53). Defendant argues that "[P]laintiff's allegations regarding . . . entrance into his 'curtilage'. . . utilize[] labels and conclusions that are without any factual support." (Dkt. No. 9-2, at 8).

Police officers need "either a warrant or probable cause plus exigent circumstances in order to make a lawful entry into a home" or its curtilage. *Kaminsky v. Schriro*, 243 F. Supp. 3d 221, 232 (D. Conn. 2017) (quoting *Harris v. O'Hare*, 770 F.3d 224, 231 (2d Cir. 2014)). However, while the Fourth Amendment protects the home and curtilage, it does not protect a private property's "open fields,"—the areas of property that "do not provide the setting for those intimate activities that the [Fourth] Amendment is intended to shelter from government interference or surveillance." *Oliver v. United States*, 466 U.S. 170, 179 (1984). For example, "[t]he route which any visitor to a residence would use is not private in the Fourth Amendment sense." *United States v. Reyes*, 283 F.3d 446, 465 (2d Cir. 2002) (alteration in original) (quoting 1 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 2.3(e), at 499 (3d ed.1996)). Therefore, "no Fourth Amendment search occurs when a law enforcement officer enters a home's driveway, walkway, or similar area that is accessible to the general public." *Nasca v. County of Suffolk*, No. 05-cv-1717, 2008 WL 53247, at *5, 2008 U.S. Dist. LEXIS 176, at *20 (E.D.N.Y. Jan. 8, 2008) (citing *Reyes*, 283 F.3d at 465); *see also Serby v. Town of Hempstead*, No. 04 Civ. 901, 2006 WL 2853869, at *8, 2006 U.S. Dist. LEXIS 103697, at *19–20 (E.D.N.Y. Sep. 30, 2006).

Here, the Court does not consider Plaintiff's assertion that Officer Davy entered onto his "private curtilage" because whether an area is the curtilage of the home is a legal conclusion. *Golodner v. City of New London*, No. 14-CV-00173, 2015 WL 1471770, at *6, 2015 U.S. Dist. LEXIS 41370, at *14–15 (D. Conn. Mar. 31, 2015) ("[B]y labeling the relevant area as

11

'curtilage,' plaintiff is not making a factual allegation, but rather stating a conclusion."). Likewise, the Court does not consider Plaintiff's statement that there was no "emergency circumstance" because it is a legal conclusion. *See Iqbal*, 556 at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."); *Zheng*, 2026 WL 810388, at *4, 2026 U.S. Dist. LEXIS 61070, at *10 ("A court resolving a motion to dismiss does not 'credit' mere 'conclusory assertions 'or legal conclusions couched as factual allegations.'" (quoting *Dane*, 974 F.3d at 188–89)); *Walker*, 390 F. App'x at 857 (reviewing the district court's "*legal conclusion* that there were exigent circumstances" (emphasis added)); *Williams*, 998 F.3d at 738 (reviewing the district court's "*legal conclusion* as to exigency" (emphasis added)). Because Plaintiff does not provide adequate allegations as to where Officer Davy was physically located or describe the factual circumstances that support Plaintiff's allegations that there "was no lawful justification" for Officer Davy to approach Plaintiff's private property, he fails to state a claim for unlawful search in violation of the Fourth Amendment.

### 3.     False Arrest

Plaintiff alleges that he was "arrested and detained after declining to provide [his] name while located] on [his] private property in the absence of a lawful warrant and probable cause of a crime." (Dkt. No. 8 at ¶ 59). Defendant again points to the lack of factual information regarding this claim, arguing that "the allegations, [including "effectuating an arrest,"] without any supporting facts, are not unconstitutional per se." (Dkt. No. 9-2, at 8). Plaintiff argues that "[b]ecause traffic infractions are not crimes, they cannot supply authority for custodial arrest." (Dkt. No. 10, at 9).

The elements of a claim for false arrest under Section 1983 are substantially the same as those for a claim of false arrest under state law. *Jocks v. Tavernier*, 316 F.3d 128, 134 (2d Cir.

2003). Under New York law, a plaintiff must allege that "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *Hernandez v. United States*, 939 F.3d 191, 199 (2d Cir. 2019) (quoting *McGowan v. United States*, 825 F.3d 118, 126 (2d Cir. 2016)). A confinement is "privileged" if it is based on "probable cause." *See, e.g.*, *Simpson v. City of New York.*, 793 F.3d 259, 265 (2d Cir. 2015). "A police officer has probable cause to arrest when he has 'knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime.'" *Hulett v. City of Syracuse*, 253 F. Supp. 3d 462, 494 (N.D.N.Y. 2017) (quoting *Jackson v. City of New York*, 939 F. Supp. 2d 235, 249 (E.D.N.Y. 2013)). A court assessing probable cause "considers only the facts 'available to the officer at the time of the arrest and immediately before it.'" *Ashley v. City of New York*, 992 F.3d 128, 136 (2d Cir. 2021) (quoting *Stansbury v. Wertman*, 721 F.3d 84, 89 (2d Cir. 2013)).

Plaintiff's conclusory assertion that he was "arrested and detained after declining to provide [his] name," (Dkt. No. 8, ¶ 59), provides no factual details regarding the charge(s) for which he was arrested. And the Court does not consider Plaintiff's legal conclusion that Officer Davy had no probable cause to arrest Plaintiff. *C.f. Homere v. Inc. Village of Hempstead*, 322 F. Supp. 3d 353, 359–60 (E.D.N.Y. 2018) ("However, simply including the phrase 'without probable cause' is insufficient [to allege a lack of probable cause in a malicious prosecution claim], and plaintiffs cannot point to any factual allegations to support a plausible claim that there was a lack of probable cause . . . ."). The remaining factual allegations provide that Plaintiff was "handcuffed, searched, transported to the Chenango County Sherriff's Office, processed,

13

and detained there." (Dkt. No. 8, ¶ 31). In addition, "[a] criminal case was commenced against [him] in a local town court based on the same incident." (*Id.* at ¶ 33). But without more, these allegations do not give rise to constitutional violations. *See Avant v. Miranda*, No. 21-CV-0974, 2021 WL 1979077, at *6, 2021 U.S. Dist. LEXIS 94511, at *15 (E.D.N.Y. May 18, 2021) ("'Conclusory assertions that [Plaintiff] was "illegally" or "unlawfully" arrested are not sufficient to state a claim under' Section 1983."); *Santiago v. City of New York*, No. 15-CV-517, 2016 WL 5395837, at *3, 2016 U.S. Dist. LEXIS 132376, at *7 (E.D.N.Y. Sep. 27, 2016) ("[A]rrest and detention, absent additional facts do not constitute constitutional violations."), *aff'd*, 697 F. App'x 36 (2d Cir. 2017). Plaintiff's amended complaint leaves critical questions unanswered, such as what crime(s) he was charged with and whether there is a factual basis for the conduct underlying the charge(s). Without such factual allegations, the Court cannot "draw the reasonable inference that [Officer Davy] is liable for the misconduct alleged." *See Iqbal*, 556 U.S. at 678; *see also Avant*, 2021 WL 1979077, at *6, 2021 U.S. Dist. LEXIS 94511, at *13 ("The [false arrest and false imprisonment] claims fail because the Complaint fails to allege facts 'suggesting that the arrest was not privileged.'"). Because the amended complaint fails to allege facts stating a claim for false arrest and unlawful detainment the Court dismisses that claim.

####         4.      Excessive Force

Plaintiff brings a claim for "excessive force/assault and battery." (Dkt. No. 8, ¶¶ 55–57). Plaintiff asserts that Officer Davy "drew and pointed a loaded firearm at me while I was unarmed and not engaging in any criminal activity." (*Id.* at ¶ 56). He also alleges that he was "physically touched, handcuffed, and restrained during the arrest." (*Id.* at ¶ 57). Defendants move to dismiss this claim on the basis that the amended complaint "provides no further details regarding . . . the specifics of Davy's alleged use of force, nor the location or extent or severity of plaintiff's alleged physical injuries." (Dkt. No. 9-2, at 8). Plaintiff responds that the seizure was "unlawful

14

from the outset" and that "[e]ven apart from the unlawful seizure, pointing a firearm at an unarmed resident during a non-criminal encounter violates clearly established law." (Dkt. No. 10, at 10).

The Court construes this claim as one for excessive force under the Fourth Amendment. *See Johnston v. City of Syracuse*, No. 20-CV-1497, 2021 WL 3930703, at \*5, 2021 U.S. Dist. LEXIS 166707, at \*11 (N.D.N.Y. Sep. 2, 2021) ("A number of courts have held that a § 1983 claim alleging assault and battery is properly construed as an excessive force claim."). "A section 1983 excessive force claim arising in the context of an arrest is analyzed under Fourth Amendment principles." *Higginbotham v. City of New York*, 105 F. Supp. 3d 369, 376 (S.D.N.Y. 2015) (citing *Graham v. Connor*, 490 U.S. 386, 394 (1989)).

To succeed on a Fourth Amendment excessive force claim, a plaintiff must show that the defendant's use force was "objectively unreasonable 'in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.'" *Hulett*, 253 F. Supp. at 491 (N.D.N.Y. 2017) (quoting *Hershey v. Goldstein*, 938 F. Supp. 2d 491, 519 (S.D.N.Y. 2013)). When assessing whether a police officer used force unreasonably, a court should pay "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Soares v. Connecticut*, 8 F.3d 917, 921 (2d Cir. 1993) (quoting *Graham*, 490 U.S. at 396)). In doing so, a court takes the perspective of "a reasonable officer on the scene" rather than that of hindsight. *Brown v. City of New York*, 798 F.3d 94, 100 (2d Cir. 2015) (quoting *Graham*, 490 U.S. at 396).

The Supreme Court's "Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some

15

degree of physical coercion or threat thereof to effect it." *Graham*, 490 U.S. at 396. "The police are not required to utilize the least amount of force possible to place someone in custody." *Brennan v. City of Middletown*, No. 18 Civ. 6148, 2020 WL 3820195, at *7, 2020 U.S. Dist. LEXIS 120195, at *22 (S.D.N.Y. July 8, 2020).

Plaintiff asserts that Officer Davy "drew and pointed a loaded firearm at me while I was unarmed and not engaging in any criminal activity." (Dkt. No. 8, ¶ 56). Plaintiff does not contend that Officer Davy "used a gun to exact force against him," so "Plaintiff's complaint in this regard is best characterized as premised upon the threat of force." *Pierre v. City of New York*, 531 F. Supp. 3d 620, 627 (E.D.N.Y. 2021). Courts in this circuit have held that threats of force, including the brandishing of a gun, cannot constitute excessive force as a matter of law. *Id*; *Dunkelberger v. Dunkelberger*, No. 14-CV-3877, 2015 WL 5730605, at *15, 2015 U.S. Dist. LEXIS 133814, at *42–44 (S.D.N.Y. Sep. 30, 2015) ("[T]he vast majority of cases within the Second Circuit hold that merely drawing weapons when effectuating an arrest does not constitute excessive force as a matter of law." (citing cases)); *Cabral v. City of New York*, No. 12 CIV. 4659, 2014 WL 4636433, at *11, 2014 U.S. Dist. LEXIS 131342, at *28 (S.D.N.Y. Sep. 17, 2014) (finding that the defendant's "approach with his gun drawn" did not constitute excessive force as a matter of law), *aff'd*, 662 F. App'x 11 (2d Cir. 2016).

Likewise, he does not state a claim for excessive force related to being touched, handcuffed, and restrained during his arrest. Routine handcuffing at the time of an arrest, "absent something more, cannot constitute a cognizable excessive force claim." *Stokes v. City of New York*, No. 05-CV-0007, 2007 WL 1300983, at *11, 2007 U.S. Dist. LEXIS 32787, at *40 (E.D.N.Y. May 3, 2007). Therefore, because Plaintiff alleges only that he was handcuffed during the arrest, (Dkt. No. 8, ¶ 57), the Court dismisses Plaintiff's excessive force claim. *See Stokes*,

16

2007 WL 1300983, at *12, 2007 U.S. Dist. LEXIS 32787, at *42 (granting summary judgment on the plaintiff's excessive force claim where he plaintiff did not "claim that the handcuffs were too tight, that she made any complaints of discomfort to defendants, or that she suffered any physical injury as a result of the handcuffing").

### 5.   Retaliatory Prosecution

Plaintiff brings a claim for "retaliatory initiation of criminal process" under the First, Fifth, and Fourteenth Amendments. (Dkt. No. 8, ¶¶ 63–66). He alleges that "[a] criminal case was commenced in a local town court based on the same events occurring on [his] private property," and that he "experienced emotional distress and uncertainty from the criminal prosecution." (*Id.* at ¶ 64–65). Defendants seek dismissal of Plaintiff's retaliatory prosecution claim because Plaintiff's amended complaint "does not specifically plead all of the elements of this claim," including "sufficient facts to show the absence of probable cause." (Dkt. No. 9-2, at 9). Plaintiff responds that this "argument misstates controlling precedent and treats a disputed legal issue as if it were a pleaded fact." (Dkt. No. 10, at 12).

"To plead a First Amendment retaliation claim, a plaintiff must show: (1) he has a right protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by his exercise of that right; and (3) the defendant's actions caused him some injury." *Dorsett v. County of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013). As to the second element, the retaliatory motive "must be a 'but-for' cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Nieves v. Bartlett*, 587 U.S. 391, 399 (2019). In addition, "when a plaintiff asserts a claim of retaliatory prosecution under Section 1983, the plaintiff also must plead and prove the absence of probable cause as an element of the claim." *Smith v. Town of Lewiston*, No. 17-CV-959, 2022 WL 3273241, at *12, 2022 U.S. Dist. LEXIS 143911, at *29 (W.D.N.Y. Aug. 11, 2022) (citing *Hartman v. Moore*,

17

547 U.S. 250, 265–66 (2006) ("Because showing an absence of probable cause will have high probative force, and can be made mandatory with little or no added cost, it makes sense to require such a showing as an element of a plaintiff's case, and we hold that it must be pleaded and proven.")).

Here, Plaintiffs' allegations are insufficient to state a claim for retaliatory prosecution. Plaintiff does not provide any information whatsoever as to what charge(s) were filed against him, when they were filed, or on what basis. His amended complaint does not identify the First Amendment right he was exercising that resulted in the alleged retaliation. In addition, Plaintiff does not allege that Officer Davy's arrest of him was motivated or substantially caused by the Plaintiff's exercise of any First Amendment right, nor does he allege facts from which the Court could reasonably infer Officer Davy's retaliatory intent. *See Decker Advert. Inc. v. Delaware County*, 765 F. Supp. 3d 128, 150 (N.D.N.Y. 2025) (quoting *Gagliardi v. Village of Pawling*, 18 F.3d 188, 195 (2d Cir. 1994)) ("Recognizing that a defendant's motive and intent are difficult to plead with specificity, courts in this Circuit find that 'it is sufficient to allege facts from which a retaliatory intent reasonably may be inferred.'"). Finally, Plaintiff fails to make any factual allegations indicating that there was no probable cause for Plaintiff's criminal prosecution. For these reasons, the Court dismisses Plaintiff's First Amendment retaliation claim. *See Winnie v. Sinagra*, No. 24-CV-00940, 2025 WL 2391723, at *5, 2025 U.S. Dist. LEXIS 159289, at *8–11 (N.D.N.Y. Aug. 18, 2025) (dismissing the plaintiff's First Amendment retaliation claims where the plaintiff failed to adequately allege the defendant's retaliatory intent and also the absence of probable cause); *see also Falls v. Pitt*, No. 16-CV-8863, 2020 WL 2097626, at *6, 2020 U.S. Dist. LEXIS 77156, at *15–17 (S.D.N.Y. May 1, 2020) (finding that amending a complaint to allege a First Amendment retaliation claim would be futile where the plaintiff failed to plead that

18

the "Defendants' actions were the product of a retaliatory motive" and failed to plead the absence of probable cause).

Although the basis for Plaintiff's retaliation claim based on the Fifth Amendment is unclear,[2] this claim also fails. The Fifth Amendment provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. The Supreme Court has held that "there is no Section 1983 claim for violation of the Self-Incrimination Clause, where the statements at issue were not used against the speaker in a criminal prosecution." *Melvin v. City of New York*, No. 24-CV-4118, 2025 WL 692126, at *6, 2025 U.S. Dist. LEXIS 38802, at *15 (S.D.N.Y. Mar. 4, 2025) (quoting *Nnebe v. Daus*, 665 F. Supp. 2d 311, 333 (S.D.N.Y. 2009) (citing *Chavez v. Martinez*, 538 U.S. 760, 767 (2003) (plurality opinion)), *aff'd in part, vacated in part on other grounds*, 644 F.3d 147 (2d Cir. 2011)). Plaintiff has not alleged that any statement, or lack thereof, was used in a court proceeding; therefore, Plaintiff has failed to state a claim for retaliation based on the Fifth Amendment. *C.f. Burrell v. Virginia*, 395 F.3d 508, 510–11, 513–14 (4th Cir. 2005) (finding no violation of the Fifth Amendment where the plaintiff, who was arrested after he refused to provide proof of automobile insurance in response to officers' request, did not "allege any *trial* action that violated his Fifth Amendment rights" (emphasis in original)).

### 6.    Abuse of Authority

Plaintiff brings a claim for "abuse of authority" under the Fourteenth Amendment. (Dkt. No. 8, ¶¶ 47–50). He alleges that Officer Davy "pursued and confronted [him] on private

---

[2] Plaintiff argues in his opposition to Defendants' motion to dismiss that his Fifth Amendment claim is "punishment for silence." (Dkt. No. 10, at 12). He claims that his amended complaint "alleges that [he] was arrested after declining to provide [his] name and that criminal proceedings were initiated under Penal Law § 195.05 in connection with that refusal." (*Id.*). However, the Court does not consider his argument that "criminal proceedings were initiated under Penal Law § 195.05" because Plaintiff's amended complaint does not allege any statutes under which he was charged. And, in any event, he has failed to state a Fifth Amendment claim for the reasons set forth above.

19

property without lawful justification," and that he experienced "humiliation and distress as a direct result." (*Id.* at ¶¶ 48–49). The Court construes Plaintiffs' claim as a claim for the violation of his substantive due process rights.

"To allege a violation of substantive due process against a state actor, 'a plaintiff must allege a deprivation of a fundamental liberty interest, or a valid property interest in a constitutionally-protected benefit.'" *Puccinelli v. S. Conn. State Univ.*, No. 21-CV-00763, 2022 WL 6770967, at *8, 2022 U.S. Dist. LEXIS 185281, at *22 (D. Conn. Oct. 11, 2022) (quoting *Doe v. Zucker*, 520 F. Supp. 3d 217, 258 (N.D.N.Y. 2021), *aff'd sub nom. Goe v. Zucker*, 43 F.4th 19 (2d Cir. 2022)). Further, "[f]or a substantive due process claim to survive a Rule 12(b)(6) dismissal motion, it must allege governmental conduct that 'is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" *Velez v. Levy*, 401 F.3d 75, 93 (2d Cir. 2005) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998)). "[T]he protections of substantive due process are limited to government action that is 'arbitrary, conscience-shocking, or oppressive in a constitutional sense, but not against government action that is incorrect or ill-advised.'" *Padberg v. McGrath-McKechnie*, 203 F. Supp. 2d 261, 282–83 (E.D.N.Y. 2002) (emphasis omitted) (quoting *Lowrance v. Achtyl*, 20 F.3d 529, 537 (2d Cir.1994)), *aff'd*, 60 F. App'x 861 (2d Cir. 2003).

Here, absent any factual allegations regarding the criminal case and the civil traffic citations and the resolution of those actions, Plaintiff fails to plausibly allege that Officer Davy's conduct was conscience-shocking. *See Angevin v. City of New York*, 204 F. Supp. 3d 469, 483 (E.D.N.Y. 2016) (granting a detective's motion for summary judgment on the plaintiff's substantive due process claim arising from the dismissal of his indictment for rape due to inconsistent witness statements because plaintiff failed to establish that the officer "engaged in

20

the kind of heinous behavior recognized in the law as 'conscious-shocking'"). The Court thus dismisses Plaintiff's claim for a violation of his substantive due process rights under the Fourteenth Amendment.

### D.       Section 1983 Claims Against Village of Afton

Plaintiff brings a *Monell* claim against the Village. He alleges that the Village "was responsible for the training and supervision of [Officer Davy] at all relevant times," and that Plaintiff "sustained harm as a result of the training and supervision failures alleged." (Dkt. No. 8, ¶¶ 68, 69). Defendants move to dismiss this claim because Plaintiff "has not pled plausible facts specific to support a specific constitutional deprivation sustained by the plaintiff, nor does the Amended Complaint identify any policy, custom, policy statements, ordinances, regulations, decisions, or any other facts or admissible evidence to support a policy or custom on behalf of the Defendants." (Dkt. No. 9-2, at 10). The Court agrees.

The Village is subject to liability under section 1983 pursuant to the doctrine of municipal liability. *See Abreu v. City of New York*, No. 17 CIV. 6179, 2018 WL 3315572, at *8, 2018 U.S. Dist. LEXIS 111938, at *21 (S.D.N.Y. July 5, 2018). *Monell* extends municipal liability to a municipality or municipal organization "where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation." *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) (citing *Monell*, 436 U.S. at 694). Thus, to successfully state a claim for municipal liability, a plaintiff must "make factual allegations that support a plausible inference that the [alleged] constitutional violation took place pursuant either to a formal course of action officially promulgated by the municipality's governing authority or the act of a person with policy making authority for the municipality." *Missel v. County of Monroe*, 351 F. App'x 543, 545 (2d Cir. 2009) (citing *Vives v. City of New York*, 524 F.3d 346, 350 (2d Cir. 2008)). "Absent such a custom, policy, or usage, a municipality

cannot be held liable on a respondeat superior basis for the tort of its employee." *Jones v. Town of E. Haven*, 691 F.3d 72, 80 (2d Cir. 2012); *see also Los Angeles County v. Humphries*, 562 U.S. 29, 36 (2010) ("[I]n *Monell* the Court held that 'a municipality cannot be held liable' solely for the acts of others, e.g., '*solely* because it employs a tortfeasor.'" (emphasis in original) (quoting *Monell*, 436 U.S. at 691)).

"Once a plaintiff has demonstrated the existence of a municipal policy, a plaintiff must then establish a causal connection, or an 'affirmative link,' between the policy and the deprivation of his constitutional rights." *Deferio*, 770 F. App'x at 590 (citing *Vippolis v. Village of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985)). "Boilerplate statements" that county employees were acting in accord with a municipal policy, with no facts to support those statements, are not sufficient to support a *Monell* claim. *See Brown v. Oneida County*, No. 15-CV-0849, 2016 WL 4275727, at *4, 2016 U.S. Dist. LEXIS 106836, at *12 (N.D.N.Y. Aug. 12, 2016).

The existence of a municipal policy or custom may be plead by "a failure by policymakers to train or supervise that amounts to deliberate indifference to the rights of those who come into contact with the inadequately trained or supervised municipal employees." *Crawley v. City of Syracuse*, 496 F. Supp. 3d 718, 729 (N.D.N.Y. 2020) (citing *Deferio v. City of Syracuse*, 770 F. App'x 587, 589 (2d Cir. 2019)). Deliberate indifference is "a stringent standard of fault," which requires "'proof that a municipal actor disregarded a known or obvious consequence'" of the particular failure in training. *Id.* (quoting *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 410 (1997)). "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train.'" *Id.* (quoting *Brown*, 520 U.S. at 409); *see also Dixon v. City of Syracuse*, 493 F. Supp. 3d 30, 37 (N.D.N.Y. 2020) ("Given the assorted hurdles to municipal liability, 'a single incident

22

alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy.'" (quoting *DeCarlo v. Fry*, 141 F.3d 56, 61 (2d Cir. 1998))). The Supreme Court has cautioned that a "municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick*, 536 U.S. at 61.

Plaintiff has not adequately alleged a failure-to-train claim against the Village. Plaintiff's allegation that the Village failed to train Officer Davy is entirely conclusory; he does not specify what training Officer Davy lacked, nor that the Village's alleged failure amounted to deliberate indifference. *See Moore v. City of New York*, No. 08 CIV. 8879, 2010 WL 742981, at \*6, 2010 U.S. Dist. LEXIS 19183, at \*17 (S.D.N.Y. Mar. 2, 2010) ("Allegations that a defendant acted pursuant to a 'policy' or 'custom' 'without any facts suggesting the policy's existence, are plainly insufficient.'" (quoting *Missel*, 351 F. App'x at 545); *Bradley v. City of New York*, No. 08-CV-1106, 2009 WL 1703237, at \*3, 2009 U.S. Dist. LEXIS 51532, at \*10–13 (E.D.N.Y. June 18, 2009) ("The Complaint's conclusory, boilerplate language—that the City 'fail[ed] to adequately train, discipline, and supervise' employees and 'fail[e]d to promulgate and put into effect appropriate rules and regulations applicable to the duties and behavior' of its employees— is insufficient to raise an inference of the existence of a custom or policy, let alone that such a policy caused Plaintiff to be arrested without probable cause.'" (citation omitted)); *Simms v. City of New York*, No. 10-CV-3420, 2011 WL 4543051, at \*3, 2011 U.S. Dist. LEXIS 115949, at \*10 (E.D.N.Y. Sep. 28, 2011) (dismissing allegations that contained only legal conclusions and boilerplate and that did not permit the court to infer what city policies, practices, and customs led to the alleged constitutional violation), *aff'd* 480 F. App'x 627 (2d Cir. 2012). As such, Plaintiff's allegations are insufficient to state a *Monell* claim against the Village.

### E.    State Law Claims

Plaintiff seeks "damages available under New York common and statutory law pursuant to 28 U.S.C. § 1367." (Dkt. No. 8, ¶ 71). Having found that all of Plaintiff's federal claims are subject to dismissal, the Court declines to exercise jurisdiction over any state law claims. *See* 28 U.S.C. § 1367(c)(3) (providing that a district court "may decline to exercise supplemental jurisdiction over [pendent state law claims] if . . . the district court has dismissed all claims over which it has original jurisdiction"); *Jackson v. Wells Fargo Home Mortg.*, 811 F. App'x 27, 30 (2d Cir. 2020) (finding no abuse of discretion where the district court declined to exercise supplemental jurisdiction over the plaintiff's state law claims after dismissing the plaintiff's amended complaint for failure to state a violation of federal law); *Torres v. City of New York*, 590 F. Supp. 3d 610, 629 (S.D.N.Y. 2022) ("A district court usually should decline the exercise of supplemental jurisdiction when all federal claims have been dismissed at the pleading stage." (quoting *Denney v. Deutsche Bank AG*, 443 F.3d 253, 266 (2d Cir. 2006)).

### F.    Leave to Amend

"Generally, leave to amend should be freely given, and a pro se litigant in particular should be afforded every reasonable opportunity to demonstrate that he has a valid claim." *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (quoting *Matima v. Celli*, 228 F.3d 68, 81 (2d Cir. 2000)). But a court may, in its discretion, deny leave to amend "for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *MSP Recovery Claims, Series LLC v. Hereford Ins. Co.*, 66 F.4th 77, 90 (2d Cir. 2023) (quoting *Bensch v. Est. of Umar*, 2 F.4th 70, 81 (2d Cir. 2021)).

In view of Plaintiff's pro se status and because the Court cannot say filing an amended complaint with additional factual allegations would be futile, the Court will permit Plaintiff to amend his complaint. *See Grabinski v. Portfolio Recovery Assocs., LLC*, No. 11-cv-9712, 2012

24

WL 1877251, at *1, 2012 U.S. Dist. LEXIS 78655, at *1–2 (S.D.N.Y. Apr. 19, 2012) ("[I]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits.") (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Any such amended complaint will replace the existing complaint and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the Court. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect." (quoting *Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977))). Any exhibits that Plaintiff wishes the Court to consider going forward must be attached to the amended complaint. This means that the previous complaint and other filings will no longer be the operative documents—everything that is essential must be contained in or attached to the amended complaint.

## V.    CONCLUSION

For these reasons, it is hereby

**ORDERED** that Defendants' motion to dismiss (Dkt. No. 9) is **GRANTED**; and it further is

**ORDERED** that Plaintiff's amended complaint (Dkt. No. 8) is **DISMISSED without prejudice**; and it is further

**ORDERED** that any amended complaint must be filed within thirty (30) days of the date of this Order; and it is further

**ORDERED** that if Plaintiff does not file an amended complaint within thirty (30) days, the Clerk of the Court is directed to close this case without further order.

**IT IS SO ORDERED.**

Dated: June 11, 2026

Brenda K. Sannes
Chief U.S. District Judge

25